Ramanujan Nadadur (Cal Bar No. 315718)
(Email: Anuj_Nadadur@nskumarlaw.com)
11620 Wilshire Blvd, Suite 250
Los Angeles, California 90025
Telephone: (310) 479-1383
Facsimile: (310) 479-1393

Attorneys for Petitioner
ANTONIO SANCHEZ MARQUEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

ANTONIO SANCHEZ MARQUEZ

A# 246-062-243

Petitioner,

v.

WARDEN, DESERT VIEW FACILITY, ADELANTO ICE PROCESSING CENTER; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES

Respondents.

**PETITION FOR WRIT OF HABEAS CORPUS**

**Case No.**

## I. INTRODUCTION AND FACTUAL BACKGROUND

1. Petitioner Antonio Sanchez Marquez ("Mr. Sanchez Marquez") is a long-time resident of Simi Valley, California. He works as a landscaper for Major Landscape Inc. (*See* Ex. A, 'Petitioner W-2s and Employment Documents' at 1-16). He originally entered the United States from Mexico in around 2002 and has no known criminal history. Mr. Sanchez Marquez is the father of a 21-year-old U.S. citizen son, Jaun Antonio Sanchez, and a 17-year old U.S. citizen daughter Mariana Sancuez. (*See* Ex. B, 'U.S. Citizen Children Birth Certificates' at 17-21.)
2. Having just turned twenty-one years old on July 3, 2026, Mr. Sanchez Marquez's U.S.-citizen son Juan Antonio Sanchez was preparing to submit an I-130 Petition for Alien Relative, seeking permanent residency on behalf of his father, as a U.S. citizen adult child. (*See* Ex. B, 'U.S. Citizen Children Birth Certificates' at 18.)
3. Mr. Sanchez Marquez is the primary caregiver for his wife, Hilaria Limon Hernandez, who is undergoing dialysis treatment for chronic kidney disease. (*See.* Ex. D, 'Marriage Certificate' at 42, *See* Ex. E, 'Hilaria Limon Hernandez Medical Documents' at 45-47).
4. Since arriving in the United States, Mr. Sanchez Marquez has worked at various landscaping companies in Southern California and has paid U.S. federal income taxes on his income earned. (*See* Ex. C, 'U.S. Federal Income Tax Returns 2017-2025 at 23-40).
5. Mr. Sanchez Marquez has lived his life openly in the United States for over twenty years, working to support his wife and his U.S. citizen children, and traveling freely throughout the country. He has gained a liberty interest in the United States through raising and associating with his family, working in landscaping, and participating in various community groups including his church. (*See* Ex. F, 'Affidavits from Community Members' at 48-58).
6. Through the address that he provided to the federal government and his

Application for an Individual Taxpayer Identification Number (ITIN), Mr. Sanchez Marquez provided notice to Respondents of his location and his status as a foreign national living in the United States. Mr. Sanchez Marquez continued to voluntarily update Respondents of his location at 4131 Cochran Street Simi Valley, CA, and subsequently 4415 Alamo Street Simi Valley, CA through his federal tax filings. (*See* Ex C, 'U.S. Federal Income Tax Returns 2017-2025 at 23-40.) As of around August 2025, the IRS was sharing contact information for noncitizens without status with Respondents. *See Center for Taxpayer Rights et al v. Internal Revenue Service et al.*, Case No. 26-5006, slip op. at 5-8 (D.C. Cir. Sept. 8, 2026). Respondents did not attempt to arrest or detain Petitioner until September of 2026.

7. Mr. Sanchez Marquez was detained by Immigration and Customs Enforcement ("ICE") on or around September 4, 2026, over a year after the date that the IRS was likely sharing tax return information with Respondents. Mr. Sanchez Marquez was arrested in an at large operation by ICE agents in unmarked vehicles while at work. He received no pre-deprivation process prior to his arrest. He received no notice and no opportunity to be heard.
8. Respondents have since held Mr. Sanchez Marquez at the Desert View Facility, Adelanto ICE Processing Center. (*See* Ex. G 'ICE Detainee Locator' at 60.)
9. Mr. Sanchez Marquez has not yet had a custody redetermination hearing before the Executive Office of Immigration Review ("EOIR") or another neutral arbiter.
10. To vindicate Mr. Sanchez Marquez's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus and order him released from custody forthwith. Alternatively, the Court should order that EOIR provide Mr. Sanchez Marquez with a custody redetermination hearing at which Respondents bear the burden of proof to show that Mr. Sanchez Marquez is a risk of flight or a danger to the community.

## II. JURISDICTION

11. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

12. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

13. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## III. VENUE

14. Venue is proper because Petitioner is detained at the Desert View Facility, Adelanto ICE Processing Center, which is within the jurisdiction of this District.

15. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, and Petitioner resides in this District. 28 U.S.C. § 1391(e).

## IV. REQUIREMENTS OF 28 U.S.C. § 2243

16. The Court must grant the petition for writ of habeas corpus "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

17. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

18. Petitioner is currently detained at the Desert View Facility, Adelanto ICE Processing Center in Adelanto, CA. He is in the custody, and under the direct control, of Respondents and their agents.

19. Respondent is the Warden of the Desert View Facility, Adelanto ICE Processing Center, and she/he has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner. The Warden is a legal custodian of Petitioner.

20. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Mullin is a legal custodian of Petitioner.

21. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## V. LEGAL ARGUMENT

### A. Mr. Sanchez Marquez Is Entitled to Immediate Release Because Respondents Detained Him and Deprived Him of His Liberty Interest Without Providing Him Any Process.

22. Mr. Sanchez Marquez has a constitutionally protected liberty interest for one of two reasons. First, because Respondents did not detain him for several years even though they were aware of Mr. Sanchez Marquez's status and location in the United States, they deliberately acquiesced to his presence at liberty. *See*

*Kalkan v. Chestnut,* No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026). Second, even if Respondents were not aware of Mr. Sanchez Marquez' exact status and location because he entered the country without inspection, he developed a significant liberty interest over the course of twenty years, and Respondents' actions deprived him of this liberty interest in violation of his constitutional due process rights. *See Lobo-Portillo v. Johnson*, 5:26-cv-02105-SSS-AYP, 2026 WL 1365628 at *2 (C.D. Cal. May 8, 2026). In either scenario—i.e. whether Respondents impliedly acquiesced to Mr. Sanchez Marquez' continued presence at liberty or whether Mr. Sanchez Marquez simply developed a strong liberty interest by virtue of his significant connection to the United States over the last twenty years—he merits immediate release from custody to remedy the ongoing violation of his constitutional due process rights.

23. The Fifth Amendment provides that "[n]o person" shall "be deprived of life, liberty, or property, without due process of law," including in removal proceedings. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Thus, "adequate procedural protections" are required to ensure detention "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.*

24. District courts have recently found that previous detention is not required to establish a protected liberty interest. Rather, Respondents' affirmative decision not to detain an individual for many years, despite knowing their status and location, serves to acquiesce to a noncitizen's continued presence at liberty. When a noncitizen develops a liberty interest through this type of acquiescence, Respondents cannot take the liberty interest away with no pre-deprivation process. *See Kalkan v. Chestnut,* No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), *appeal dismissed*, No. 26-3277, 2026

WL 2446315 (9th Cir. June 18, 2026). *See also See Anderson v. Chernut*, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("the government's knowing decision not to detain an individual creates a liberty interest in their continued release.")

25. In this case, Mr. Sanchez Marquez made respondents aware of his status and location through his IRS federal tax filings. Even if the IRS may not have always shared this information with Respondents over the course of the last twenty years, in around August 2025, the IRS had an agreement with Respondents to share the address information of noncitizens with Respondents. *See Center for Taxpayer Rights et al v. Internal Revenue Service et al.*, Case No. 26-5006, slip op. at 5-8 (D.C. Cir. Sept. 8, 2026). Despite this sharing of information beginning at least a year ago, Respondents acquiesced to Mr. Gonalez Villegas' continued presence at liberty. During this period, Petitioner supported his family, cared for his stepdaughter suffering from schizophrenia, and raised his U.S.-citizen son.

26. Mr. Sanchez Marquez was arrested in an at-large operation, in August of 2026, and he received no pre-deprivation notice or opportunity to be heard prior to this arrest. The remedy for this due process violation is immediate release. *See Morales v. Warden, Adelanto Det. Facility*, No. 5:26-CV-01786-MBK, 2026 WL 1105036, at *3 (C.D. Cal. Apr. 17, 2026); *Wang v. Semaia*, No. 26-00203-KK-MBKX, 2026 WL 258440, at *7 (C.D. Cal. Jan. 29, 2026). *See also Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *7 (E.D. Cal. Oct. 17, 2025) (collecting cases). As an alternative remedy to immediate release, courts have ordered a post-deprivation hearing in which Respondents bear the burden of proof to show that a petitioner like Mr. Sanchez Marquez is a danger or a flight risk. *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

27. If this Court finds that Mr. Sanchez Marquez did not have a protected liberty interest based on the deliberate acquiescence of Respondents, he still has a

liberty interest in remaining free based on his long-standing ties to the United States and the long period of time he remained in the Unites States, building roots in this country. In that situation, the instant case is akin to another case in the Central District in which a court ordered immediate release in similar circumstances. *See Lobo-Portillo*, 2026 WL 1365628 at *2 ("Although courts typically find a liberty interest in a noncitizen's freedom from detention for those who were initially detained and later released on supervision or parole, courts have held that 'even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'" (internal citations omitted).) The *Lobo-Portillo* court held that a petitioner's liberty interest, developed over many years of freely living in the United States following an entry without inspection, justified immediate release because of the significance of that liberty interest and the risk of erroneous deprivation caused by the government's lack of process in arresting the petitioner. *Id*.

28. The same analysis applies here when applying the *Mathews v. Eldridge* factors to Mr. Sanchez Marquez' situation. As for the private interest, Mr. Sanchez Marquez developed a significant liberty interest over the course of around twenty years in the United States, living a free and open life supporting his family. Mr. Sanchez Marquez's liberty interest outweighs any countervailing considerations by the government because releasing Mr. Sanchez Marquez from custody would incur minimal costs, and the government shares his interest in protecting his constitutional rights. Moreover, the government failed to give any pre-deprivation process to Mr. Sanchez Marquez, which carries a substantial risk of erroneous deprivation. Therefore, he merits immediate release to remedy the ongoing violation of his constitutional rights. *See Lobo-Portillo*, 2026 WL 1365628 at *2. *See also Mendoza v. Noem*, 823 F. Supp. 3d 636, 649 (W.D. Tex.

2026) (ordering immediate release to someone who entered without inspection and was never previously detained by Respondents, based on his substantial liberty interest in the United States under *Mathews*).

**B. Mr. Sanchez Marquez Does Need to Exhaust Administrative Remedies Prior to Filing for Habeas Relief.**

29. Mr. Sanchez Marquez is not required to exhaust administrative remedies. Exhaustion for habeas claims is prudential, not jurisdictional. *See Liang v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004).

30. As a prudential matter, administrative exhaustion is not required in cases like Petitioner's for at least three reasons. First, "a postdeprivation bond hearing cannot remedy the alleged deprivation of predeprivation process." *Rodriguez Morales v. Warden*, No. 5:26-CV-04203-SB-ADS, 2026 WL 2365058, at *2 (C.D. Cal. Aug. 14, 2026). Second, exhaustion would be futile because Petitioner raises constitutional claims that cannot be adjudicated by the administrative agencies. *De Avila Hernandez v. Warden of Adelanto Ice Processing Ctr.*, No. 5:26-CV-02747-MAR, 2026 WL 1916444, at *3 (C.D. Cal. June 26, 2026). Third, Petitioner, who is being detained in violation of his constitutional rights, would suffer irreparable harm if required to exhaust administrative remedies. *Id.*

## VI. CLAIMS FOR RELIEF

### COUNT ONE – Violation of the Fifth Amendment and the Immigration and Nationality Act

31. The allegations in the above paragraphs are realleged and incorporated herein. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

32. The government was constitutionally and statutorily required to provide Petitioner with notice and an opportunity to be heard prior to detaining him because he possessed a protected liberty interest in remaining free. Because

Respondents did not provide any pre-deprivation process to Petitioner, Respondents must release him from custody immediately, to stop the ongoing violation of his rights.

33. Alternatively, Respondents must provide Petitioner with a bond hearing where Respondents bear the burden to show he is a danger or a flight risk.

34. Petitioner's ongoing detention violates the Due Process Clause and the Immigration and Nationality Act.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays this Court grant the following relief:

1) Assume jurisdiction over this matter;
2) Declare that Petitioner's ongoing detention violates the Due Process Clause of the Fifth Amendment;
3) Issue a Writ of Habeas Corpus and order Respondents to immediately release Petitioner from DHS custody;
4) Alternatively, order that Petitioner be released within 7 days unless Respondents schedule a hearing before a neutral arbiter where Respondents bear the burden to show that Petitioner presents a danger or flight risk, and that available conditions of supervision cannot mitigate any such risks;
5) Award reasonable costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, or on any other basis justified under law; and
6) Grant such further relief as the Court deems just and proper.

Respectfully submitted,

DATED: September 14, 2026

By /s/ *Ramanujan Nadadur*

Ramanujan Nadadur

Counsel for Petitioner

**Declaration of Ramanujan Nadadur**

1. I am counsel of record for Antonio Sanchez Marquez. I am a member of the state bar of California and admitted to practice in the District Court for the Central District of California. I provide this declaration to authenticate the attached exhibits, and to provide further background regarding this case.

2. Attached to this Habeas Petition as Exhibit A is a true and correct copy of Antonio Sanchez Marquez's W-2 Filings, and documents confirming his employment in Landscaping.

6. Attached to this Habeas Petition as Exhibit B are true and correct copies of the birth certificates of Mr. Antonio Sanchez Marquez's children.

4. Attached to this Habeas Petition as Exhibit C are true and correct copies of Mr. Antonio Sanchez Marquez's Federal Tax Returns from 2017-2025.

5. Attached to this Habeas Petition as Exhibit D is a true and correct copy of Mr. Antonio Sanchez Marquez's Marriage Certificate, confirming his marriage to his wife, Mrs. Hilaria Limon Hernandez.

5. Attached to this Habeas Petition as Exhibit E is a true and correct copy of Mrs. Hilaria Limon Hernandez's medical documents from Davita Dialysis.

5. Attached to this Habeas Petition as Exhibit F are true and correct copies of letters from Mr. Antonio Sanchez Marquez's community supporters, attesting to his good moral character.

9. Attached to this Habeas Petition as Exhibit G is a true and correct copy of the ICE Detainee Locator for Mr. Antonio Sanchez Marquez. I electronically retrieved it on September 15, 2026 from the applicable website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 15, 2026 at Los Angeles, California.

/s/ Ramanujan Nadadur

Ramanujan Nadadur