**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO SANCHEZ MARQUEZ, Petitioner, v. WARDEN, DESERT VIEW FACILITY, et al., Respondents. | Case No. 5:26-cv-05368-MBK<br>ORDER GRANTING WRIT OF HABEAS CORPUS |

Petitioner Antonio Sanchez Marquez, a native and citizen of Mexico, is currently in the custody of the Department of Homeland Security ("DHS") at the Desert View Annex in Adelanto, California. Mr. Sanchez Marquez entered the United States without inspection in or around 2002 and has remained in the country since that time. During his over two decades in the United States, Mr. Sanchez Marquez has married, raised two United States children, worked to support his family, regularly paid his taxes, been an active member of his church, and has no criminal history. On September 4, 2026, Immigration and

Customs Enforcement ("ICE") officers arrested Petitioner at his workplace in an operation targeting another individual.

In this habeas action, Petitioner argues that his detention without a warrant and without a custody review violates the Immigration and Nationality Act and due process. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has denied him the procedural protections to which he is entitled under 8 U.S.C. § 1226(a) and there is no basis for his continued detention.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Antonio Sanchez Marquez is a native and citizen of Mexico. Dkt. 6 at 2. He originally entered the United States without inspection in or around 2002. *Id*. Petitioner settled in Simi Valley, California. *Id*. He is married to Hilaria Limon Hernandez. *Id*. Together, they have two children: a 21-year-old U.S. citizen son, Juan Antonio Sanchez, and a 17-year-old U.S. citizen daughter, Mariana Sanchez. *Id*.

Since arriving in the United States, Petitioner has worked at various landscaping companies in Southern California and has paid U.S. federal income taxes on his income earned. *Id*. He works to support his wife and children. *Id*. He is also the primary caregiver for his wife, who is undergoing dialysis treatment for chronic kidney disease. *Id*. Petitioner is an active member of his church and regularly volunteers at church and community events. Dkt. 6-1 at 49-59. Family and friends submitted letters of support that describe Petitioner as a kind-hearted, hardworking, and peaceful man who is deeply devoted to his family and church community. *Id*. at 54. Petitioner has no criminal history in the United States. Dkt. 6 at 2.

Petitioner has lived openly in the United States for the past twenty years and traveled freely throughout the country. *Id*. By submitting an Application for an Individual Taxpayer Identification Number ("ITIN") and regularly filing his federal tax returns, Petitioner notified the Government of his location and status as a foreign national living in the United States. *Id*. at 3. Petitioner alleges that, on or around August 2025, the Internal Revenue Service ("IRS") began sharing information about noncitizens without status with immigration authorities. *Id*. However, Respondents did not attempt to arrest or detain Petitioner for the next year. *Id*.

On or around September 4, 2026, ICE officers arrested Petitioner at his workplace as part of an at-large operation targeting another individual. *Id*. at 3. Prior to his arrest, ICE provided Petitioner no notice, opportunity to be heard, or other pre-deprivation process. *Id.* Petitioner further alleges that ICE had no warrant and conducted no pre-arrest assessment of whether he was a risk of escape before a warrant could be obtained. *Id*. at 9. After taking Petitioner into custody, ICE did not conduct a prompt custody determination. *Id*. at 10. ICE subsequently transferred Petitioner to the Desert View Facility in Adelanto, California, where he remains today. *Id*. As of September 18, 2026, Petitioner had not received an initial custody determination or bond hearing in Immigration Court. *Id*.

Petitioner filed the instant habeas action on September 15, 2026. Three days later, on September 18, 2026, he filed a First Amended Petition ("FAP"). Petitioner challenges his ongoing detention on the following grounds: (1) his detention without pre-deprivation notice or an opportunity to be heard violated due process; (2) Respondents violated the Immigration and Nationality Act ("INA") by arresting Petitioner without a warrant or assessment that he was a risk of escape, and by failing to conduct a prompt

initial custody determination. Dkt. 6 at 11-12. Petitioner requests that the Court order his immediate release or, in the alternative, a hearing before a neutral arbiter where Respondents bear the burden to show that Petitioner presents a danger or flight risk, and that available conditions of supervision cannot mitigate any such risks. *Id.* at 12.

Respondents filed an Answer on September 23, 2026, and attached Petitioner's Form I-213. Dkt. 9. Respondents state that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)" and "is properly detained pending such potential bond proceedings because this is Petitioner's first detention." *Id.* at 2. Respondents also argue that Petitioner's claims are unexhausted "to the extent Petitioner has not yet requested such a bond hearing from the Immigration Court." *Id.* Respondents did not directly address Petitioner's due process or statutory claims or contest the factual allegations in the Petition.

Petitioner filed a reply on September 23, 2026. Dkt. 10. Petitioner observes that Respondents did not dispute that Petitioner is subject to 8 U.S.C. § 1226(a) and that "[t]his law requires that Respondents follow a very specific process prior to detaining someone like Mr. Sanchez Marquez," but Respondents did not follow those steps. *Id.* at 2. Petitioner also reiterated his due process arguments. *Id.* at 5-7.

On September 24, 2026, this Court issued an order in which it observed that "Petitioner states that he was taken into custody 'without a warrant or a risk-of-scape analysis' or 'an immediate custody determination' as required by Section 1226(a) and that therefore Petitioner was effectively 'treated' as detained under Section 1225." Dkt. 11. The Court stated: "To the extent that Respondents dispute Petitioner's allegations, Respondents are authorized to

file a supplemental brief on or before September 28, 2026, to provide to evidence to support their position." *Id.*

Respondents filed a supplemental brief on September 28, 2026. Dkt. 12. In their brief, Respondents state that they "dispute Petitioner's allegations" and that "Petitioner's arrest is supported by probable cause." *Id.* at 2. Respondents' brief was supported by a declaration of Deportation Officer Ana C. Mendoza and attached Petitioner's Warrant for Arrest of Alien (Form I-200), Record of Deportable/Inadmissible Alien (Form I-213), and Notice to Appear (Form I-862). Dkt. 12-1 at 1-13. Officer Mendoza avers that "[o]n September 3, 2026, ICE-ERO officers arrested the Petitioner pursuant to a warrant of arrest." *Id.* at 1.

## II. DISCUSSION

Petitioner argues that he is entitled to release because Respondents violated the INA by arresting him without a warrant or risk-of-escape analysis and by failing to provide him with an initial custody determination under Section 1226(a). Dkt. 6 at 11-12. To evaluate this claim, the Court begins by reviewing the procedural requirements for DHS to arrest and detain a noncitizen under Section 1226(a). The Court then explains why these procedural protections are grounded in due process principles that prohibit the detention of noncitizens without a legitimate purpose and without proper process. Because Respondents arrested and detained Petitioner without any determination that it was necessary, the Court concludes that Petitioner's detention was unlawful from the outset and he is entitled to release.

### A. Detention under Section 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to

removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d).

Regardless whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person under Section 1226. 8 C.F.R. § 236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

The Form I-286 includes "the formal mechanism—a box the detainee

may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially

change." *Rodriguez Diaz*, 53 F.4th at 1202.

**B. Due Process Requires a Determination that Detention is Warranted under Section 1226(a)**

While Section 1226(a)'s "extensive procedural protections" arise from the statute and its regulations, they are also grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16 (9th Cir. Sept. 21, 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances its legitimate interests in preventing danger and flight. Unlike individuals subject to mandatory detention under Section 1226(c), Congress has not required the detention of individuals detained under Section 1226(a). *See*

*Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Instead, Section 1226(a) provides immigration authorities with the discretion to detain or release such individuals "pending a decision on whether" they are "to be removed from the United States." 8 U.S.C. § 1226(a). It follows that due process requires the Government to exercise this discretion and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to Section 1226(a) would be effectively subject to mandatory detention, in direct contravention of Congress's determination that detention under Section 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk."). For these reasons, courts have found that noncitizens are "entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause." *Garcia-Maya*, 2026 WL 1965886, at *5; *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (discussing "the due process protections found within § 1226(a)").

This case implicates the "several layers" of process that are required for DHS to arrest and initially detain a noncitizen under Section 1226(a). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, the INA only authorizes immigration authorities to arrest an individual under Section 1226(a) with a warrant issued by certain designated supervisory officers or, in limited circumstances, without a warrant based on probable cause and a determination that the individual is likely to escape. For individuals taken

into custody, the regulations require that DHS must conduct a prompt custody review and, if it determines that detention is warranted, provide the individual an opportunity to request IJ review at a bond hearing.

These procedures serve several important due process purposes. The initial custody review ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also requires DHS to provide written justification for a decision to detain and "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original).

The initial custody determination is also the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8. Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' ... including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.'") (quoting *Rivas Garcia v.*

*Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026). Without an initial custody determination, then, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

In light of the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight, et al.*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under §

1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Because Petitioner's Detention Has Been Unlawful from the Outset, He is Entitled to Release**

Petitioner claims that "Respondents violated 8 U.S.C. § 1226(a) and its implementing regulations by not assessing Mr. Sanchez Marquez's risk of escape prior to his arrest and by not providing him with an immediate custody determination hearing following his arrest." Dkt. 6 at 9. In their Answer, Respondents argue that Petitioner is "properly detained pending [] potential bond proceedings" under Section 1226(a), (Dkt. 9 at 2), but did not address Petitioner's claims that he was arrested without a proper risk-of-escape analysis and not provided an initial custody review. The Court therefore authorized Respondents to file a supplemental brief to address Petitioner's factual allegations and provide "evidence to support their position." Dkt. 11.

In their supplemental brief, Respondents state that they "dispute Petitioner's allegations," (Dkt. 12 at 1), but do not provide any evidence to support that ICE conducted a risk-of-escape analysis or initial custody review. Respondents argue that "Petitioner's arrest is supported by probable cause," citing the description of his apprehension in the Form I-213. *Id.*; Dkt. 12-1 at 7-8 (explaining that ICE agents were conducting a targeted operation for a different individual and approached Petitioner because he "closely matched the known physical description of the" target; in a subsequent interview, Petitioner admitted that he was a citizen of Mexico and did not have lawful status in the United States). But Petitioner does not claim that the ICE

officers lacked probable cause to believe he is removable. Rather, he claims that "the arrest of a noncitizen such as Mr. Sanchez Marquez requires a warrant 'except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained,'" and "there was no warrant for Mr. Sanchez Marquez's arrest, and no pre-arrest assessment of whether Mr. Sanchez Marquez was a risk of escape." Dkt. 6 at 9 (quoting 8 C.F.R. 287.8(c)(2)(ii)). Respondents' evidence confirms that ICE officers arrested Petitioner without a warrant, (Dkt. 12-1 at 8) (stating that "ICE Officer's [sic] conducted a warrantless arrest Under [sic] 8 U.S.C. 1357(a)(2)/INA 287(a)(2)"), and provides no indication that they conducted a risk-of-escape analysis before doing so.[1]

Respondents' supplemental brief also does not address whether ICE conducted an initial custody review. Respondents did not submit a Form I-286 for Petitioner and nothing in Respondents' submitted evidence suggests that an initial custody review was completed. Respondents have now had two opportunities to contest Petitioner's factual allegations with competent evidence, but have been unable to do so. The Court therefore concludes that ICE both failed to conduct a proper risk-of-escape analysis to justify Petitioner's warrantless arrest and failed to provide Petitioner with an initial custody review at the outset of his detention.

Based on these uncontested facts, the Court agrees with Petitioner that his arrest and detention violated 8 U.S.C. § 1226(a) and due process for the reasons discussed *supra*. The Court must determine, then, the proper remedy

---

[1] In her declaration in support of Respondents' supplemental brief, Officer Mendoza states that "ICE-ERO officers arrested the Petitioner pursuant to a warrant of arrest," (Dkt. 12-1), but she provides no support for this assertion and it is contradicted by the I-213 attached to her declaration. While ICE issued a Warrant for Arrest of Alien, Form I-200, (Dkt. 12-1 at 11), it appears that it was issued after ICE completed Petitioner's warrantless arrest.

for the violation of Petitioner's rights. Respondents argue that, "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." Dkt. 9. at 2; Dkt. 12 at 2. However, as most courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). Petitioner has now been confined nearly a month without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "'no substitute'" for initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from

detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Finally, the Court observes that Respondents do not argue that Petitioner is in fact a danger or flight risk, or that there is any other basis for his continued detention. Nor does the record reveal any justification for Petitioner's detention. He is a long-time resident of the United States, with deep community and family ties, and no criminal history. *See supra* Section I. As such, it is appropriate to prevent Petitioner's re-detention unless Respondents can show a material change in circumstances warranting his detention. *See Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437 (C.D. Cal. July 14, 2026) (discussing the due process limitations on re-detention). While Respondents are not prohibited from re-detaining Petitioner in the future, they may only do so if they comply with the requirements of Section 1226(a) and demonstrate there is a material change in circumstances warranting Petitioner's re-detention.[2]

---

[2] Because the Court concludes that Petitioner is entitled to release on his Section 1226(a) claim, it declines to address his alternative procedural due process

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Antonio Sanchez Marquez's (A# 246-062-243) immediate release and prohibiting his re-detention absent a hearing before a neutral decisionmaker at which the Government must show material changed circumstances justifying his detention; and (3) Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: October 1, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

---

claim.